IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| LILLY PATHWAY LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>DELOITTE LLP,<br><br>    Defendant. | CIVIL ACTION NO.: 4:22-cv-655<br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR PATENT INFRINGEMENT

1.      This is an action under the patent laws of the United States, Title 35 of the United States Code, for patent infringement in which Lilly Pathway LLC ("Lilly" or "Plaintiff") makes the following allegations against Deloitte LLP ("Deloitte" or "Defendant").

### PARTIES

2.      Plaintiff is a Texas limited liability company, having its primary office at 2100 14th St., Suite 107 (PMB 1046), Plano, TX 75074 located in Collin County, Texas.

3.      Defendant is a Delaware corporation with a principal place of business at 4022 Sells Dr., Hermitage, TN 37076. Defendant has a regular and established place of business at 2501 Westlake Parkway, Westlake, TX 76262. Defendant's Registered Agent for service of process in Delaware appears to be Corporation Service Co., 251 Little Falls Dr., Wilmington, DE 19808.

### JURISDICTION AND VENUE

4.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      Venue is proper in this district under 28 U.S.C. §§ 1391(c), generally, and under 1400(b), specifically. Defendant has a regular and established place of business in this Judicial District, and Defendant has also committed acts of patent infringement in this Judicial District.

6. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to their substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

7. Defendant has a regular and established place of business in Denton County, Texas – at 2501 Westlake Parkway, Westlake, TX 76262:





8. The instrumentalities accused of infringement (as detailed hereafter) are used and operated daily at this location.

9. Defendant has infringed, and does infringe, by operating, transacting, and conducting business within the Eastern District of Texas.

10. Defendant's location in Denton County is a regular and established place of business in this Judicial District, and Defendant has committed acts of infringement at its location within this District. Venue is therefore proper in this District under 28 U.S.C. § 1400(b).

<u>COUNT I</u>
<u>INFRINGEMENT OF U.S. PATENT NO. 7,715,564</u>

11. Plaintiff is the owner by assignment of the valid and enforceable United States Patent No. 7,715,564 ("the '564 Patent") entitled "License Information Conversion Apparatus" – including all rights to recover for past, present and future acts of infringement. The '564 Patent issued on May 11, 2010 and has a priority date of August 8, 2001. A true and correct copy of the '564 Patent is attached as Exhibit A.

12.     The Defendant uses – in their branding creation, design, and collaboration for their products, services, merchandise, and advertising materials – Adobe Creative Cloud ("Adobe Systems"):





13. More specifically, the Adobe Systems that Defendant directly uses in commerce are the infringing instrumentalities ("Defendant's Infringing Instrumentalities" or "Infringing Instrumentalities").

14. The Defendant's Infringing Instrumentalities operate based upon an enterprise license from Adobe to Deloitte, for use of the Infringing Instrumentalities, stored in or accessible from Deloitte's systems.

15. An admin within Deloitte has control over the Infringing Instrumentalities such that the admin can access the enterprise license and, from that license, create end-user specific packages (or sublicenses) to various operations and features of the Infringing Instrumentalities:



16. The admin creates the end-user specific packages based upon the end-user's system information:

17. The admin configures various permissions within the end-user package by selecting from a plurality of possible permissions associated with the enterprise license:



18. The admin user has a stored license package that can be translated/converted to a sharable package that can be deployed to different devices/platforms and users. The Infringing Instrumentalities store permissions for this conversion, and history of packages created by the admin. Non-admin users who get a generated package do not have permission to share the generated license or further create a sharable package:

Using the Adobe Admin Console, organizations can define a flexible administrative hierarchy that enables fine-grained management of Adobe product access and usage. One or more System admins, provisioned during the enterprise onboarding process, sit at the top of the hierarchy. These System admins can delegate responsibilities to other admins, while still retaining overall control.

Administrative Roles provide the following key benefits to enterprises:

- Controlled decentralization of administrative responsibilities
- Quick view of product assignments—by user and by product
- Functionality to assign quotas to Product admins

https://helpx.adobe.com/enterprise/using/admin-roles.html

A user group is a collection of different users that have to be given a shared set of permissions. There are various permissions across different products that have to be assigned to many users in varying order. Managing permissions by user is not a sustainable model.

For example, say that you have a department and you want to assign a product to every member of the department. One way to do it would be to modify the individual permissions of every user in the department and assign the product to each of them. The more convenient method is to create a user group containing all the members of the department and then assign the product to that user group. This method allows the administrator to be decoupled from the management of every user. You could later add more users to that group or remove users from the group. The group permissions remain the same while the users within the group changes.

https://helpx.adobe.com/enterprise/using/user-groups.html

# Introduction

Shared Device License is a licensing method targeted at educational institutions where software is assigned to a device instead of an individual. Anyone who logs on to the device will have access to Adobe's products and services. This method of licensing is ideal for desktop computer labs and classrooms.

https://helpx.adobe.com/enterprise/using/create-sdl-packages.html



https://helpx.adobe.com/enterprise/using/create-sdl-packages.html

19. Plaintiff herein restates and incorporates by reference paragraphs 12 – 18, above.

20. All recited elements of – at least – claims 1 and 2 of the '564 Patent are present within the structure and/or operation of Defendant's Infringing Instrumentalities.

21. Defendant's Infringing Instrumentalities convert first license information (*e.g.*, enterprise level license information associated with admin) for a first system (*e.g.*, admin's system) into second license information (*e.g.*, license information associated with an end-user) for a second system (*e.g.*, end-user's system), which is different from the first system.

22. The first license information of the Defendant's Infringing Instrumentalities comprises at least two pieces of usage permission information for permitting use of content data.

23. Defendant's Infringing Instrumentalities store conversion-permission information (*e.g.*, permissions selected as part of an end-user license package) that indicates at least one piece of usage permission information from the first license information (*e.g.*, permission to create packages) that is not permitted to be converted into the second license information.

24. Defendant's Infringing Instrumentalities convert information contained in the first license information (*e.g.*, license information associated with admin), except the at least one piece of usage permission information (*e.g.*, permission to create packages), into the second license information (*e.g.*, license information associated with end-user license package).

25. Defendant's Infringing Instrumentalities infringe – at least – claims 1 and 2 of the '564 Patent.

26. Defendant's Infringing Instrumentalities literally and directly infringe – at least – claims 1 and 2 of the '564 Patent.

27. Defendant's Infringing Instrumentalities perform or comprise all required elements of – at least – claims 1 and 2 of the '564 Patent.

28. In the alternative, Defendant's Infringing Instrumentalities infringe – at least – claims 1 and 2 of the '564 Patent under the doctrine of equivalents. Defendant's Infringing Instrumentalities perform substantially the same functions in substantially the same manner with substantially the same structures, obtaining substantially the same results, as the required elements of – at least – claims 1 and 2 of the '564 Patent. Any differences between Defendant's Infringing Instrumentalities and the claims of the '564 Patent are insubstantial.

29. All recited elements of – at least – claims 1 and 2 of the '564 Patent are present within, or performed by, Defendant's Infringing Instrumentalities.

30. Defendant's Infringing Instrumentalities, when used and/or operated in their intended manner or as designed, infringe – at least – claims 1 and 2 of the '564 Patent, and Defendant is therefore liable for infringement of the '564 Patent.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a. A judgment in favor of Plaintiff that Defendant has infringed the '564 Patent;

b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith, from infringement of the '564 Patent;

c. A judgment and order requiring Defendant to pay Plaintiff its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the '564 Patent, as provided under 35 U.S.C. § 284;

d. An award to Plaintiff for enhanced damages resulting from the knowing and deliberate nature of Defendant's prohibited conduct with notice being made at least as early as the service date of this complaint, as provided under 35 U.S.C. § 284;

e. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

f. Any and all other relief to which Plaintiff may show itself to be entitled.

July 29, 2022                                                                 Respectfully Submitted,

                                                                 By:  /s/ *Ronald W. Burns*

                                                  Ronald W. Burns (*Lead Counsel*)
                                                  Texas State Bar No. 24031903
                                                  Fresh IP, PLC
                                                  5999 Custer Road, Suite 110-507
                                                  Frisco, Texas 75035
                                                  972-632-9009
                                                  ron@freship.com

                                                  **ATTORNEY FOR PLAINTIFF**
                                                  **LILLY PATHWAY LLC**